UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
**JUDITH B. BRANNEN,**              )
                                    )
        Plaintiff,                )
                                    )
v.                                  ) Case No. 1:05cv01420
                                    ) Judge: Ricardo M. Urbina
**NATIONAL RAILROAD PASSENGER**     )
**CORPORATION d/b/a Amtrak,**       )
**CSX CORPORATION, and**            )
**CSX TRANSPORTATION INC.,**        )
                                    )
        Defendants.               )
_____ )

**PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO TRANSFER**

    Plaintiff Judith B. Brannen, by and through her undersigned attorneys, opposes defendants' motion to transfer plaintiff's cause of action from this Court to the United States District Court for the District of Maryland, Southern Division, in Greenbelt, Maryland.  Based on 28 U.S.C. § 1404(a), plaintiff submits that there would be no added convenience for the parties or the witnesses with such a transfer, nor would it be in the interests of justice.  In support of her opposition, plaintiff states as follows:

FACTS

    Plaintiff's claims grow out of a train derailment on Amtrak's Capitol Limited on July 29, 2002.  Plaintiff's contract of carriage was for rail transportation from Chicago to Union Station, Washington, DC, and defendant National Railroad

Passenger Corporation (Amtrak) was operating the train at the time of the derailment.[1]  The derailment occurred on CSX Transportation's Metropolitan Subdivision of the Baltimore Service Lane on No. 1 main track on mile 11.78 in Kensington, Maryland just north of the District of Columbia.  Defendant CSX Transportation Inc., a wholly owned subsidiary of CSX Corporation, failed to repair the track properly, submitted an incorrect slow-order code that caused Amtrak to exceed a safe speed on the track, and had inadequate oversight over its track maintenance work.  During the train derailment, plaintiff, a resident and citizen of Arizona, was thrown from the car in which she was riding and suffered severe head and back injuries.

All the defendants do substantial business in the District of Columbia; Amtrak is incorporated in the District of Columbia and has its headquarters and principal place of business at 60 Massachusetts Avenue, Northeast in this jurisdiction.  CSX Transportation Inc. and CSX Corporation (hereinafter "CSX" or "CSX defendants") are incorporated in the Commonwealth of Virginia with their principal places of business in Jacksonville,

---

[1] As a common carrier, Amtrak had a duty to transport plaintiff safely, and it chose the route and track used by the Capitol Limited.

Florida.  None of the parties is a citizen or resident of the State of Maryland.

Based on road mileage as opposed to a straight line distance, the United States District Court for the District of Columbia is approximately 15.7 miles from the Kensington, Maryland crash scene, and the United States District Court for the District of Maryland, Southern Division, is approximately 13.4 miles, a difference of approximately 2.3 miles. Furthermore, the two courts are approximately 13.45 miles apart.[2]

Although Amtrak does business in this jurisdiction and 46 states, CSX Transportation hauls rail freight in the District of Columbia and only 22 or 23 states in the eastern half of the United States (and two Canadian Provinces); it does not operate its rail freight hauling business in Arizona.[3],[4]

ARGUMENT

Defendants have moved to transfer this civil action pursuant to 28 U.S.C. § 1404(a), which reads in its entirety:

---

[2]   Exhibit A has Mapquest documents to support these mileage representations.

[3]   Exhibit B has supporting data on defendants Amtrak and CSX Transportation (CSXT) to support representations about their operations.

[4]   Plaintiff, an Arizona citizen and resident, does not have jurisdiction over CSX Transportation Inc. in Arizona and had to file her action outside Arizona where personal jurisdiction exists.

>  For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Id.  Plaintiff knows no reason why her action could not have been brought in the District of Maryland, Southern Division, but denies that a transfer to that court would be of any added convenience to the parties or witnesses in this action or in the interest of justice.

Section 1404(a) reflects a policy to have federal civil suits tried at the place with considerations of convenience and justice, and that rule "empowers a district court to transfer 'any civil action' to another district court <u>if the transfer is warranted by the convenience of parties and witnesses and promotes the interest of justice</u>."  <u>Van Dusen v. Barrack</u>, 376 U.S. 612, 616 (1964)(emphasis added).  The two courts are only about 13.45 miles apart.  Amtrak's head offices are less than a mile from this Court, and Amtrak is a "citizen and resident" of the District of Columbia.  None of the parties is a resident of State of Maryland.  The headquarters and principal places of business of the CSX defendants are in Florida.  Discovery documents will primarily come from the District of Columbia and Florida, and any third-party documents from Maryland will be subject to subpoena pursuant to Rule 45(b)(2), Fed.R.Civ.Pro.,

since Kensington, Baltimore and Annapolis, Maryland are all within 100 miles of either courthouse. Most if not all defense witnesses in the District of Columbia and Maryland will also be within the subpoena power of either court, and this Court is likely to be even closer to some of the Maryland witnesses than the Court in Greenbelt, Maryland; all local witnesses, pursuant to Rule 45(b)(2), are probably subject to the subpoena power of both courts. Plaintiff will have a few damage witnesses who are not local, but these witness are equally close to either court. From an overall view of the litigation, the convenience of the parties is stronger in the District of Columbia than in Maryland, and it would appear that the convenience of the witnesses is about the same.

The defendants cannot meet their burden to show that transferring this action to the Maryland Court would significantly add to the balance of conveniences. <u>Wiren v. Laws</u>, 90 U.S.App.D.C. 105, 106-7, 194 F.2d 873, 874-75 (1951)("[A] defendant has the burden of making out a strong case for a transfer and . . . the plaintiff's privilege, conferred by statute, of choosing the forum he selected is a factor to be considered as against the "convenience" of the witnesses or what otherwise might be the balance of "convenience" as between "the parties.") For transfer, it must appear that the balance of

conveniences so clearly preponderates against plaintiff's choice that transfer may not be merely a shifting of the benefit of convenience and economy from the suitor, who has the primary option, to his adversary. National Equipment Rental, Ltd. v. Centra Cast Co., 270 F.Supp. 999, 1000 (E.D.N.Y. 1966); accord, O'Brien v. Goldstar Technology, Inc., 812 F.Supp. 383, 385 (N.D.N.Y. 1993)("The moving party bears the burden of demonstrating 'a strong case for a transfer' by showing that, under the circumstances, the interests of justice and of the parties will be better served by the transfer"). Based on the conveniences, defendants have not met their burden.

In order to determine the interests of justice pursuant to section 1404(a), a court should consider the interests of the litigants as well as public interests. Id. at 385; Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947).[5] The interests of the litigants include (1) plaintiff's initial choice of forum, (2) the convenience of the parties and the witnesses,(3) the

---

[5] Of course forum non conveniens issues within the federal courts are now governed by 28 U.S.C. § 1404(a), but the criteria set out for convenience and interests are still based on those found in Gulf Oil. Wiren v. Laws, 90 U.S.App.D.C. at 106-7, 194 F.2d at 874-75 ("[T]hese words found in Gulf Oil v. Gilbert, 330 U.S. at 508 [parallel citations omitted] still have full vitality: 'But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'").

relative ease of access to sources of proof, (4) the availability of compulsory process for the attendance of witnesses, (5) the location of relevant documents and other tangible evidence, (6) questions as to the enforceability of a judgment if one is obtained, and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive. Id. at 508; O'Brien v. Goldstar Technology, Inc., 812 F.Supp. at 385.

In going through these criteria seriatim, the interests overall do appear to favor plaintiff's choice of forum. First, plaintiff has chosen the District of Columbia to file her action. Regardless of the strength of that factor alone, it nevertheless weighs in favor of plaintiff's choice, and plaintiff could not have filed in her home forum for lack of personal jurisdiction.[6] Next, as discussed earlier, the convenience of the parties and witnesses is more in favor of the District of Columbia than Maryland. Third through Sixth, these factors favor neither

---

[6] Defendant cites Piper Aircraft v. Reyno, 454 U.S. 235, 255-56 (1981) to suggest that plaintiff's choice of forum enjoys little weight outside her own forum. We disagree. In the Reyno decision, the Court confirmed the District Court's deference to plaintiff's choice of forum and went on to state that the ordinarily strong presumption in favor of plaintiff's choice of forum would apply "with less force when the plaintiff or real parties in interest are foreign." Id. at 255-56. In Reyno, the plaintiffs were foreigners and not residents of the United States; on the contrary, plaintiff Brannen is a citizen and resident of the United States. Also, defendants rely on Judge Bates' opinion in the Daniel case, but since plaintiffs there did not oppose the transfer, their choice of forum was Maryland.

forum, and both courts have subpoena power over almost the same 100 mile area, Rule 45(b)(2), Fed.R.Civ.Pro., and are within approximately 13.45 miles of each other.  Finally, in a review of any other potential issue that would make a trial of the case easy, expeditious and inexpensive, no measurable difference is apparent between the two courts.[7]

Finally, public interest factors need to be considered. These include administrative difficulties that follow from court congestion, a local interest in having localized controversies decided locally, and the appropriateness of having the trial of a diversity case in a forum that is at home with the law that must govern the action.  812 F.Supp. at 385.  In reviewing these factors in relation to the instant action, we cannot see any significant difference between the courts.

First, in reviewing the caseload figures for both the District of Columbia and Maryland District Courts, Maryland actually has a greater caseload per judge than the District of Columbia Court.  The figures do not isolate the caseload of the three(3) judges in Greenbelt from the remaining seven(7) in Baltimore, nor do the figures weigh the difficulty of each type

---

[7]   If convenience of the attorneys for the parties is a factor, it should be noted that they all have their offices in the District of Columbia, whose court is much more convenient for travel than the court in Greenbelt, Maryland.

of case, but in 2004 figures, the latest available, the District Court for the District of Maryland handled 4,753 cases with ten(10) active judges and the District Court for the District of Columbia handled 3,121 cases with fifteen(15) active judges.[8] Those figures weigh against a transfer to Maryland.

Next, the train wreck in Kensington, Maryland is a local controversy for both southern Maryland and the District of Columbia. Although there were mostly Maryland emergency services at the scene, it was the passengers whose final destination was Union Station in the District of Columbia, including plaintiff Brannen, who suffered in the wreck of the Capitol Limited. That factor seems to be neutral in this analysis.

Finally, the laws to be applied do not significantly favor one court over the other. Even if this action were transferred, the whole law, including the choice of law, to be applied in any section 1404(a) transfer would still be the law of transferor court, the District of Columbia. Van Dusen v. Barrack, 376 U.S. at 639 & n.40. Unlike Maryland's lex loci delicti choice of law principles,[9] the District of Columbia has adopted a "governmental interests" test to determine choice of law. In re Air Crash Disaster at Washington, D.C. on January 13, 1983, 559 F.Supp. 333

---

[8]   Exhibit C shows the caseload figures for 2004.

[9]   Hauch v. Conner, 4543 A.2d 1207, 1209 (Md. 1983).

(D.D.C. 1983); <u>Hercules & Co. v. Shama Restaurant</u>, 566 A.2d 30, 40-42 (D.C.Ct.App. 1989).

After a governmental interest analysis of the laws to be applied to this action, the Maryland law of negligence would probably apply, but the law punitive damages is far from certain. As for damages law, that law is likely to be one other than Maryland law, since the place of plaintiff's citizenship and residence before and after her injuries was Arizona. Considering that the choice of law issues require District of Columbia law and the negligence and possibly punitive damages law may look to Maryland law, the law issues appear to be fairly even with Maryland having a slight edge. However, considering all the other factors, including those favoring the plaintiff's choice, defendants have not met their burden to support a transfer.

WHEREFORE, it is respectfully submitted, that defendants' motion to transfer should be denied.

Dated: August 23, 2005

_____
Nicholas Gilman, #177725
John M. Green, #476592
GILMAN & ASSOCIATES
600 Pennsylvania Ave., S.E., #410
Washington, DC 20003

Attorneys for Plaintiff