**IN THE UNITED STATES DISTRICT COURT
OF THE DISTRICT OF COLUMBIA
Civil Division**

| | |
|---|---|
| **JUDITH B. BRANNEN**<br><br>*Plaintiff,*<br><br>v.<br><br>**NATIONAL RAILROAD PASSENGER.,<br>CORPORATION,<br>CSX CORPORATION<br>CSX TRANSPORTATION, INC.**<br><br>*Defendants.* | Case No.: **05CV01420**<br>Judge Ricardo M. Urbina |

**CSX'S REPLY TO PLAINTIFF'S OPPOSITION
TO DISMISS PUNITIVE DAMAGES**

**COME NOW** Defendants, CSX Corporation and CSX Transportation, Inc., by their undersigned counsel, Whiteford, Taylor & Preston, L.L.P., file this Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss Punitive Damages and states as follows:

No matter how it is parsed, this is a classic case of negligence which does not warrant the imposition of punitive damages. Plaintiff's suggestion that the allegation of "intentional" conduct by CSX will prevent the dismissal of punitive damages misses the mark. There is a huge difference between acts which are intentional and turn out to be tortious, and those acts which are done intentionally with the evil motive of causing injury to the Plaintiff. It is the latter standard that should apply in this case and Plaintiff has not and can not in good faith make allegations that CSX with evil motive intended to injure the Plaintiff.

**I.     CHOICE OF LAW**

Punitive damages would not be allowed in any of the interested jurisdictions. However, to the extent that this Court undergoes a choice of law analysis, such analysis would still lead to the conclusion that Maryland law applies and that Plaintiff's punitive damages claim must be dismissed.[1]

The District of Columbia applies a government interest analysis in resolving choice of law issues, whereby the courts apply the law of the state with the most significant interest in the immediate controversy. *Keene Corp. v. Ins. Co. of North America*, 597 F.Supp. 934 (D.D.C. 1984). The Court first evaluates the governmental policies underlying the applicable laws of the interested states. *Long v. Sears Roebuck & Co.,* 877 F.Supp. 8 (D.D.C. 1995). Second, from those found to have conflicting interests, the Court determines which jurisdiction's policy would be most advanced by having its law applied to the facts in the case. *Id*. See also *Danziger v. Ford Motor Co.*, 2005 U.S. Dist. LEXIS 14356 (D.D.C. 2005).

**A.     CHOICE OF LAW FACTORS**

In determining what states have interests in the controversy, the District of Columbia considers the following factors:

> (1) the place where the injury occurred;
>
> (2) the place where the conduct causing the injury occurred;
>
> (3) the domicil, residence, nationality, place of incorporation and place of business of the parties; and
>
> (4) the place where the relationship, if any, between the parties is centered.

See *Hitchcock v. USA*, 665 F.2d 354 (D.C. Cir. 1981).

---

[1] Plaintiff's claim for punitive damages should be dismissed under any of the interested jurisdiction's punitive damages standards because this case simply does not involve the type of outrageous conduct warranting punitive damages.

Depending on the controversy involved in the choice of law analysis, certain factors are more important than others. In this case, the immediate controversy is the availability of punitive damages. As such, the most important factors for the Court to consider in determining which states have the greater interest are factor (2) the place where the conduct causing the injury occurred, and factor (3) the place of incorporation and place of business of Defendants. *Keene*, supra at 938 (holding "[w]hen the primary purpose of a rule of law is to deter or punish conduct, the States with the most significant interests are those in which the conduct occurred, and in which the principal place of business and place of incorporation of the defendant are located".) See also *Minebea Co,Ltd. v. Papst*, 2005 U.S. Dist. LEXIS 12709 (D.D.C. 2005).

In her Opposition, Plaintiff asserted that the place where the injury occurred does not claim as great an interest in punitive damages as in other tort-related claims, citing *Keene v. Ins. Co. of North America*. Curiously, Plaintiff omitted key distinguishing language from this case. That is, *Keene* makes it clear that where the injury occurred claims less of an interest only if that location is **different from the place of conduct**. *Keene,* supra at 939. In this case, the place of conduct is the same as the place of inquiry; thus making the place of injury a more important factor that suggested by Plaintiff. *Id*.

The remaining factors in the choice of law analysis for punitive damages are not as important. Specifically, the place where the parties' relationship is centered does not claim as great of an interest in punitive damages issues as in other tort related claims. *Keene,* supra at 939. Additionally, the state of domicile of the Plaintiff has no interest in imposing punitive damages and should not be considered in the analysis. *Keene*, supra at 938.

When affording the factors the appropriate weight in the choice of law analysis, clearly the state with the most interest in punitive damages is Maryland. The most important factors to

3

consider in this inquiry are the place of conduct, the place of incorporation, the principal place of business of CSX and the place of injury.

### B. Maryland Has the Greater Interest.

As is clear from the face of the Complaint, the conduct at issue occurred in Maryland. Plaintiff went into considerable detail in setting forth the allegations of negligent conduct, as well as the location of the conduct. For example, the Complaint provides, *inter alia*,

> It was the duty of the CSX defendants, to refrain from acts of gross negligence . . . in its ownership, operation, maintenance, inspection, and control of the railroad tracks located in or about Kensington, Maryland. . . . See Complaint, ¶32.

Moreover, Plaintiff specifically details the allegedly offending conduct - - all of which occurred in Maryland - - as specifically alleged by Plaintiff:

> CSX failed to tamp the ballast properly and adequately and to accomplish a proper run-off . . . when working on the track located in or about Kensington, Maryland . . . which lead to an unstable track profile and condition and a derailment. See Complaint, ¶33(a);
>
> They failed to supervise properly their surfacing team that worked on the tracks located in or about Kensington, Maryland . . . . See Complaint, ¶33 (b);
>
> They also failed to properly supervise their surfacing team assigned to resurface the CSX tracks located in or about Kensington, Maryland. . . See Complaint, ¶33 (c);

Importantly, Plaintiff alleges no negligent or wrongful conduct by Defendants that occurred anywhere outside of Maryland.

CSX is incorporated in Virginia with its principal place of business in Florida. Accordingly, considering the most important factors, Maryland, Virginia and Florida have the

greatest interests in the punitive damages issues in this case.[2]  In considering the remaining factors, the balance weighs in favor of Maryland.  The face of the Complaint is clear that the injury occurred in Maryland.  Further, there was no relationship between CSX and Plaintiff, other than the fact that Plaintiff was traversing over CSX's tracks in Maryland, arguably placing the relationship in Maryland, if anywhere.

The current location of this litigation is fortuitous and not a factor in this analysis.  The District of Columbia, having no relationship with CSX or Plaintiff, is a disinterested rather than interested forum.  *Keene*, supra at 940.  The fact that CSX does business in the District of Columbia has no bearing on the punitive damages issue.  *Id*. at 941.

This Court has held that the place of injury and the place of conduct are more important factors than the domicile of the defendant.  For example, in the case of *In re Air Crash Disaster at Washington, D.C.*, 559 F.Supp. 333 (D.D.C. 1983), a case analogous to the present case, the Court conducted a choice of law analysis for punitive damages arising out of an airplane crash.  In *In re Air Crash*, the location of the injury was the District of Columbia, the location of conduct was Virginia and the defendants' places of business were Florida and Texas.  Because the conduct did not occur in the defendants' states of domicile, the Court considered those factors to be less important than the location of the injury and conduct.  *Id*. at 355-356.  The Court held that the District of Columbia - - the place of injury and possibly the place of some of the conduct - - had the greater interest in punitive damages.  *Id*.

The choice of law issue can be decided now.  The Complaint is unambiguous as to where the conduct occurred, where the injury occurred and where CSX is incorporated.  Both parties

---

[2] There is a conflict between Maryland, Virginia, and Florida in that there is a difference in the way the jurisdictions have described the malice requirement.  See *Owens-Illinois v. Zenobia*, 601 A.2d 633, reconsideration den'd, 602 A.2d 1182 (Md. 1982); *Booth v. Robertson*, 374 S.E.2d 236 (Va. 1988); *Standard Jury Instruction – Civil Case – No. 96-1*, 689 So. 2d 1042 (Fla. 1997).

5

agree that CSX's principal place of business is in Florida. After analyzing the choice of law under the appropriate framework, the result is most clearly Maryland.

## II.   PLAINTIFF FAILED TO STATE A CLAIM FOR PUNITIVE DAMAGES.

Although in a 12(b)(6) posture, the court need not to accept as true conclusory allegations that are not supportable by the facts alleged. As Plaintiff asserts on page 2 of her Opposition, what the Plaintiff has alleged is that CSX "failed to repair the track properly, submitted an incorrect slow order code that caused the operator to exceed at safe speed on the track, and had inadequate oversight over its track maintenance work." Whether those events were done accidentally or intentionally is not the issue. The issue is whether they were done with an evil motive. An intentional decision to do something that turns out to be a mistake, and therefore tortious, is far short of the actual malicious conduct required to sustain a claim for punitive damages.

Even assuming the truth of the factual allegations asserted, they would establish that CSX employees engaged in intentional conduct which amounted to negligence. This factual scenario is quite typical in negligence cases - - intentionally and knowingly running a red light, speeding, or the deliberate decision by, for example, a physician not to conduct a certain test. It is telling the Plaintiffs have not alleged - - and can not - - that the CSX employees lifted the speed restriction with the evil intent to derail the train and with the evil intent to injure or kill people. Of course, there is absolutely no evidence for such an allegation. In short, Plaintiff's allegations establish that CSX employees made mistakes which, if proven, amount to negligence. Such mistakes, even if it they were deliberate acts resulting in negligence, simply falls way short of the support needed to sustain a claim for punitive damages.

Although Plaintiff has certainly provided notice that she is advancing a claim for punitive damages, notice is not the issue. If the complaint continues no factual allegations to support punitive damages, it should be dismissed:

> for a Plaintiff to recover punitive damages, the complaint must contain a specific claim for punitive damages and "must set for facts that, if proven true, would entitle the Plaintiff to punitive damages. . ."
>
> the "purpose of punitive damages is . . . to punish the defendant for egregiously bad conduct toward the Plaintiff, [and] also to deter the defendant and others contemplating similar behavior" . . . Consequently, with respect to both intentional and non-intentional torts, an award of punitive damages must be based upon actual malice, in the sense of conscious and deliberate wrongdoing, evil or a wrongful motive, intent to injure, ill will or fraud. *Bowden v. Caldor*, 710 A.2d 267, 276 (Md. 1998). (*interior citations omitted*)

Plaintiff is suggesting the standard to be applied would be a willful disregard for human life. However, that standard, set forth in *Smith v. Gray Concrete Pipe Co.*, 297 A.2d 721 (Md. 1972), was specifically overruled by *Owens Illinois v. Zenobia*, 601 A.2d 633 (Md. 1992), See *Komornik v. Sparks*, 629 A.2d 721, 725 (Md. 1993). *Komornik* involved an automobile accident in which the Defendant was driving while intoxicated, had several prior DWI's, and had had his license suspended. However, even though driving a vehicle under those circumstances may amount to gross negligence, there were no allegations or evidence that Defendant driver intended with evil motive to injure the Plaintiff[3]. The *Komornik* court rejected Plaintiff's attempt to return

---

[3] The result would be the same under D.C. Law. " In the District of Columbia, with rare exceptions, punitive damages are available only for intentional torts." *Gemison v. National Baptist Convention, U.S.A, Inc.*, 720 A2.d 275, 285 n.9 (D.C. 1998). "Punitive damages are not favored by the law." *Knippen v. Ford Motor Company*, 546 F.2d 993, 1002 (D.C. Cir. 1976). To prevail on a claim for punitive damages in D.C. the Plaintiff must prove that the Defendant "committed a tortious act, and by clear and convincing evidence that the act was accompanied by conduct or state of mind evincing malice or its equivalent." *Jonathan Woodner Co. v. Breeden*, 665 A.2d 929, 938 (D.C. 1995) defendant's conduct. These allegations which, at their essence, amount to mistakes made in preparing the track and in allowing a particular slow order amount to negligence, but would not fall within the rare exception in D.C. Cf. *Woodner*, supra (wrongful eviction case where landlord hired thugs who brandished guns and engaged in other malicious acts to intimidate tenants to try to force them out of their units).

7

to the reckless disregard/implied malice standard and held that under the facts in that case punitive damages were not sustainable. *Id*.

Nor is Plaintiff's attempt to make a products liability analogy availing. First, this is a derailment case, and in no way shape or form can be considered a products liability case. A review of the complaint and the lack of any such type of allegations confirm this. In *Zenobia* the court articulated the standards for actual malice in a products liability type of case. The standard is still actual malice. Second, it is an impermissible stretch to argue that CSX relinquished control of the tracks to Amtrak. Far from it. As is alleged in the complaint, CSX alone had the obligation and duty to maintain the tracks - - from the time of the first alleged negligent act up until the accident itself. See Complaint, ¶ 33.

                                      Respectfully submitted,

                                      /s/ *John J. Hathway*
John J. Hathway, Esq. (#412664)
Stephen B. Caplis, Esq. (#452991)
Jennifer S. Jackman, Esq. (#466922)
Whiteford, Taylor & Preston L.L.P.
1025 Connecticut Avenue, NW, Ste. 400
Washington, DC  20036-5405
(202) 659-6800

*Attorney for Defendants,
National Railroad Corporation, CSX
Corporation and CSX Transportation,
Inc.*

8

**CERTIFICATE OF SERVICE**

     I HEREBY CERTIFY that on this 29th day of August, 2005, a copy of the foregoing Motion to Transfer was mailed first class, postage prepaid to:

Nicholas Gilman, Esq.<br>
John Green, Esq.<br>
Gilman & Associates<br>
600 Pennsylvania Avenue, SE<br>
Suite 410<br>
Washington, DC  20003

                                                 /s/ *John J. Hathway*
                                                 John J. Hathway

177741